UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**OPERATING ENGINEERS LOCAL 324 FRINGE BENEFIT FUNDS, TRUSTEES OF OPERATING ENGINEERS LOCAL 324 FRINGE BENEFIT FUNDS,**

**CIVIL ACTION NO. 04-40380**

     **Plaintiffs,**

 VS.

**DISTRICT JUDGE PAUL V. GADOLA**

**PAVEMENT MUNCHERS, INC., LISA R. CLAYPOOL, DENNIS R. SMITH,**

**MAGISTRATE JUDGE MONA K. MAJZOUB**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion for Summary Judgment against Defendants Lisa R. Claypool and Dennis R. Smith. (Dkt. No. 19). This Court recommends that Summary Judgment against Lisa Claypool be **GRANTED** and Summary Judgment against Dennis Smith be **DENIED**.

*****

Plaintiffs filed a Motion for Summary Judgment against Defendants Claypool and Smith on April 28, 2006. On July 25, 2006 Defendants Claypool and Smith filed a Response to Plaintiffs' Motion for Summary Judgment. Plaintiffs filed a Reply to that Response on July 28, 2006. The Court is waiving oral argument with the consent of the parties.

Plaintiffs are multi-employer employee benefit plans within the meaning of Section Three of the Employee Retirement Income Security Act, 29 U. S. C. §§ 1001-1461 ("ERISA"). Plaintiffs are governed by boards of trustees appointed by employers and Operating Engineers Local 324.

Plaintiffs exist to pay medical benefits and other fringe benefits to members of the Operating Engineers Local 324. When employers hire Local 324 union members, the employers do not directly finance the costs of the members' various fringe benefits. Instead, the collective bargaining agreement requires the employers to pay Plaintiffs to administer the benefits. Pavement Munchers has been party to a collective bargaining agreement with Operating Engineers Local 324 since April, 2004. (Pls.' Mot. for Summ. J. at Ex. 1).

Defendant Pavement Munchers, Inc. is a Michigan construction company that has employed Local 324 union members on various construction projects. In 2005, Pavement Munchers employed between 20 and 28 employees. (Dep. of Def. Lisa R. Claypool at 27). Defendant Lisa R. Claypool is the president and sole shareholder of Pavement Munchers. Defendant Dennis R. Smith is Lisa Claypool's father and is also an employee of Pavement Munchers. Pavement Munchers operated out of Smith's home as of April 6, 2006.

Plaintiffs allege that Pavement Munchers is a continuation of another business, Denron Inc. Denron is the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Michigan. The Bankruptcy petition was originally filed under Chapter 11 of the Bankruptcy Code, but has been converted to a proceeding under Chapter 7 of the Bankruptcy Code. Plaintiffs have an allowed claim of $393,370.10 in the Denron proceeding for non-payment of funds due under the Operating Engineers collective bargaining agreement. Denron's president and sole shareholder was Dennis Smith.

The parties do not dispute that Defendant Pavement Munchers failed to pay fringe benefit contributions to Plaintiffs, and they do not dispute the amount of money owed to Plaintiffs. Defendants admit that Defendant Pavement Munchers owes Plaintiffs $70,405.25. (Defs.' Resp. to Pls.'

Mot. for Summ. J. against Claypool and Smith at 1).  At issue in the instant motion is the personal liability of Defendants Claypool and Smith for Pavement Muncher's debts.

Pavement Munchers was founded in 1998.  Defendant Claypool paid a lawyer $2500 to file the articles of incorporation and issue stock in the company.  (Dep. of Def. Claypool at 30).  Pavement Munchers was otherwise uncapitalized, and was designed to be financed on revenue Pavement Munchers received from contract work.  *Id.* at 30, 31.  Pavement Munchers has never had a meeting of the board or shareholders' meeting.  *Id.* at 37.  There is nothing in the record to suggest that Pavement Munchers kept corporate minutes.

Lisa Claypool is the president and sole shareholder of Pavement Munchers.  (Dep. of Def. Lisa Claypool at 7).  As president, Claypool managed Pavement Munchers' day to day operations.  *Id.* at 8.  Decisions concerning what to do with Pavement Munchers' funds were made jointly by Defendants Claypool and Smith.  *Id.*  Claypool and Smith "preferred" to pay the fringe benefits due to Plaintiffs, but Pavement Munchers made these payments based on "cash flow" rather than as a matter of course.  *Id.* at 18.

Claypool drew a salary in excess of nine hundred dollars a week from Pavement Munchers from the time Pavement Munchers began operating in 2004 through February 2006.  *Id.* at 9, 10.  Pavement Munchers paid Claypool six hundred dollars a month as an automobile stipend.  *Id.* at 12.  Claypool also used her personal funds to pay for Pavement Munchers' job materials, tools, parts, office supplies, maintenance supplies, and fuel expenses.  *Id.* at 11, 12, 32, 33.  Pavement Munchers reimbursed her for approximately three quarters of these expenses.  *Id.* at 33.  Claypool maintained records of the expenses she personally covered in "an envelope full of receipts."  *Id.*  Claypool used her personal funds to cover $4500 in payroll expenses, and Pavement Munchers eventually reimbursed the expense.  *Id.* at 31, 32.

Following decisions made by Claypool and Smith, Pavement Munchers continued to employ operating engineers even though Claypool knew Pavement Munchers did not have the funds to pay their fringe benefits. *Id.* at 22. Claypool made and issued payroll statements reflecting that Pavement Munchers had withheld wages in order to pay fringe benefits and make contributions to the Operating Engineers 324 vacation and holiday fund, but Pavement Munchers did not make those payments and contributions. *Id.*

## **STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block,* 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

## **DISCUSSION AND ANALYSIS**

Plaintiffs argue that Defendants Claypool and Smith should be held personally liable for two reasons. First, Plaintiffs argue that the corporate entity of Pavement Munchers should be disregarded because it was merely the alter ego of Defendants. Second, Plaintiffs argue that Defendants were ERISA fiduciaries who misappropriated plan assets.

A company's contributions to ERISA benefit funds are "plan assets" under 29 U.S.C. 1002(21)(A) when they become due. *Operating Engineers Local 324 Fringe Benefit Funds v. Nicolas Equipment, L.L.C.,* 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004). *See also e.g., Southern Electrical Health Fund v. Kelley*, 308 F.Supp.2d 847, 867 n. 10 (M.D. Tenn. 2003).

A corporation is presumed to be separate from its shareholders. *Laborer's Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704 (1988). However, courts can pierce the veil and reach the personal assets of shareholders if there are "substantial reasons for doing so." *Id.* (internal quotation and citation omitted). Courts determine whether to pierce the corporate veil after weighing (1) the amount of respect shareholders gave the separate corporate entity, (2) the degree of potential injustice visited upon litigants by upholding the corporate form; and (3) the fraudulent intent of the incorporators. *Id.* Facts weighing in favor of piercing the corporate veil include: undercapitalization, failure to maintain separate books, failure to separate corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. *Id.*

When deciding whether to recognize the corporate form, Courts consider underlying legislative policies. *First Nat'l City Bank v. Banco Para El Comerica Exterior de Cuba*, 462 U.S. 611, 630 (1983). ERISA was enacted in part to protect employees from being deprived of pension, health, and other benefits by

their corporate employers, and courts therefore more readily disregard the corporate form to protect employees' ERISA benefits. *Laborer's Pension Trust Fund*, 872 F.2d, 705.

    A.     **Failure to Observe the Corporate Form**

It is undisputed that Pavement Munchers has never had a board meeting or shareholders' meeting, and that it has not created regular corporate minutes. Defendant Claypool was the sole shareholder, sole board member, and the chief executive of Pavement Munchers. She ran all of Pavement Munchers' day to day operations. Claypool frequently "loaned" money to the corporation without a formal agreement. Claypool paid corporate expenses out of her own pocket, and the corporation paid her personal expenses. Defendants Claypool and Smith both withdrew money from the corporation while Plaintiffs remained unpaid. Pavement Munchers was founded without capital assets, and paid its expenses out of revenue from old projects. When the company was unable to meet payroll obligations, Claypool "loaned" money to cover the expense.

Defendants' Response to Plaintiffs' Motion conclusorily states that the corporate form was respected at all times. Defendants have produced no evidence in connection with this assertion. Defendant Claypool stated in her deposition that she keeps some record of expenses she personally incurs on behalf of the corporation in "an envelope full of receipts." The Court is compelled to conclude that Pavement Munchers was operated as a mere alter ego of Lisa Claypool, and that the corporate veil should be pierced.

Smith's situation differs slightly. Claypool testified at her deposition that major financial decisions were made jointly by her and Smith. Smith also drew a salary in 2004, 2005, and 2006. It is unclear from the record before the Court how much influence Smith actually had over Pavement Munchers' financial operations. At the very least, he was aware that Pavement Munchers paid money to its employees, to him, to Lisa Claypool, and to other creditors while leaving Plaintiffs without

payment. It is not clear whether Smith ever had authority or discretion to cause his daughter or Pavement Munchers pay Plaintiffs.

### B. Fiduciary Liability

Plaintiffs argue in the alternative that Defendants Claypool and Smith should be held personally liable for breach of fiduciary duty. ERISA provides that a person is a fiduciary with respect to an employee benefit plan to the extent that he exercises discretionary authority or control over an ERISA benefit plan or its assets. 29 U.S.C. § 1002(21)(A); *Best v. Cyrus*, 310 F.3d 932, 934-35 (6th Cir. 2002).

As discussed above, the payments due to Plaintiffs were "plan assets" at the moment they were due. Defendants are ERISA fiduciaries to the extent that they exercised any authority or discretion over the disposition of the funds owed to Plaintiffs. *Iron Workers Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d 794, 805. Employees who pay company creditors instead of forwarding trust assets or who personally make conscious choices to use withheld employee contributions to pay company expenses are personally liable ERISA fiduciaries. *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997); *Connors v. Paybra Mining Co.*, 807 F.Supp. 1242, 1246 (S.D. W. Va. 1992). It is beyond dispute that Lisa Claypool had authority and discretion over the disposition of these funds, and used some of them to pay herself, her father, other employees, and other creditors of Pavement Munchers, rather than surrender the plan assets to the plan. Lisa Claypool is personally liable for the funds owed to Plaintiffs even if the corporate form should otherwise be respected.

In contrast, the record does not demonstrate whether Dennis Smith had the authority or discretion to change Pavement Munchers' conduct in this regard. Presented with the evidence now before the Court, a reasonable jury may or may not conclude that Smith had such authority or discretion. Therefore, summary judgment against Smith is premature.

Plaintiffs' Motion for Summary Judgment against Defendant Claypool should be **GRANTED**. Plaintiffs' Motion for Summary Judgment against Defendant Smith should be **DENIED**.

## NOTICE TO PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of Health and Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Willis v. Secretary, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 09, 2006                        s/ Mona K. Majzoub
                                                        MONA K. MAJZOUB
                                                        UNITED STATES MAGISTRATE JUDGE

## Proof of Service

  I hereby certify that a copy of this Report and Recommendation upon Counsel of Record on this date.

Dated: August 09, 2006         s/ Lisa C. Bartlett
                  Courtroom Deputy